FILED
United States Court of Appeals
Tenth Circuit

February 13, 2009

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

RODNEY PAUL TENORIO,

Defendant-Appellant.

No. 08-2076
(D.C. No. 1:07-CR-01865-WJ-1)
(D.N.M.)

ORDER AND JUDGMENT[*]

Before **LUCERO**, Circuit Judge, **McWILLIAMS**, Senior Circuit Judge, and
**McCONNELL**, Circuit Judge.

Rodney Paul Tenorio was arrested after arriving at his ex-girlfriend

Stephanie Mojica's house in violation of a restraining order. Responding officers

found a 12-gauge shotgun and several boxes of ammunition in Mojica's car, and

Mojica told them these belonged to Tenorio. Tenorio was charged with

possessing a firearm and ammunition as a felon, in violation of 18 U.S.C.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 32.1.

§§ 922(g)(1) and 924(a)(2), and possession of the same as a person subject to a restraining order, in violation of §§ 922(g)(8) and 924(a)(2). A jury convicted him on both counts.

At trial, the district court allowed Mojica to testify about two prior occasions on which she saw Tenorio with the same gun, including testimony that he had threatened her on one of these occasions. Tenorio challenges his conviction, arguing that this testimony was substantially more prejudicial than probative and the court thus abused its discretion by admitting it. At sentencing, the district court found that Tenorio had committed New Mexico state felonies of aggravated assault and aggravated stalking by threatening Mojica with the gun on a past occasion, and it therefore imposed a sentencing enhancement for possessing the gun in connection with a felony. Tenorio also challenges this enhancement, arguing that the district court clearly erred in crediting Mojica's testimony and thus, that his sentence is procedurally unreasonable.

We do not see an abuse of the district court's broad discretion to balance probative value against possible prejudice under Federal Rules of Evidence 403 and 404(b). Moreover, while we agree that a factfinder might reasonably have doubted the credibility of Mojica's testimony, the time for finding sentencing facts has passed, and we discern no clear error by the court below in crediting her testimony and imposing the enhancement. Exercising jurisdiction under 28

U.S.C. § 1291 and 18 U.S.C. § 3742, we affirm Tenorio's conviction and sentence.

**I**

On June 18, 2007, Mojica called 911, stating that Tenorio had threatened her and had a gun. At the time, Tenorio was subject to a restraining order prohibiting him from contacting Mojica. When a police officer arrived at Mojica's home, Tenorio was gone. The officer spoke to Mojica and her roommate, Jamie Black. They explained that Mojica and Tenorio had argued after he came to the house to ask her for a ride, and that Tenorio had threatened her with his fist. Tenorio then grabbed Mojica's car keys and cell phone, went outside, and got into her car. The two women followed Tenorio outside. As Tenorio got into the vehicle, Mojica noticed that he was holding a gun.[1] Black also reported seeing the shotgun next to Tenorio in the car. Mojica and Black spotted an Albuquerque Public Schools maintenance vehicle across the street and borrowed the driver's phone to call the police. Tenorio became angry, got out of the car, and left on foot.

The responding officer found a loaded shotgun between the driver's seat and the center console of Mojica's car, several boxes of ammunition on the floor behind the seat, and a bag of men's clothing in the back seat, which contained more ammunition. Mojica told the officer that these items belonged to Tenorio

---

[1] Mojica initially told responding officers that she did not see Tenorio holding the gun as he got into the car, but testified differently at trial.

and that Tenorio had threatened her with the same gun in the past. In the meantime, another officer found and arrested Tenorio, who was still carrying Mojica's keys and cell phone. Tenorio consistently denied the gun was his and claimed it was in the car when he entered it. He was indicted as a felon in possession and a person subject to a restraining order in possession.

Two months after these events occurred but before Tenorio's trial, Mojica gave officers a more detailed account of the past occasions on which she had seen the gun. First, she stated that she saw the gun in Tenorio's possession sometime in April 2007. On that occasion, Tenorio had the gun in the cab of his vehicle and told Mojica that he needed it for protection. Second, she described seeing the gun on June 17, the day before her 911 call. On that date, Mojica explained, she agreed to bring their son to Tenorio's girlfriend's apartment to visit him. She and Tenorio argued, and she decided to leave. After exiting the apartment and putting their son in his car seat in the back seat of her vehicle, she turned to see Tenorio behind her holding the gun. Although he did not point the gun at Mojica, Tenorio said, "You know I could hurt you" and "You know not to mess with me," then gestured as if to hit her. Mojica got in the driver's seat, but before she could leave, Tenorio took their son from the car seat. Mojica grabbed the child from him and ran to a friend's house on foot.

Before trial, Tenorio moved to exclude Mojica's testimony about the April and June 17 gun sightings, which the government offered as proof that Tenorio

-4-

possessed the same firearm on prior occasions. Tenorio filed two motions in limine challenging the testimony as inadmissible prior acts evidence under Federal Rules of Evidence 403 and 404(b). In response, the government argued that the evidence was relevant to Tenorio's intent, motive, knowledge, and absence of mistake in possessing the firearm and was therefore admissible. The court allowed the testimony, subject to limiting instructions to be developed at trial. At trial, Mojica testified regarding the April and June 17 events. Tenorio's counsel did not renew an objection to the testimony.

Instructed to consider Tenorio's prior possession of the firearm "only as it bears on the defendant's motive, opportunity, intent, knowledge, absence of mistake or accident and for no other purpose," the jury convicted Tenorio on both counts, and the case proceeded to sentencing. In his presentence report ("PSR"), Tenorio's base offense level was calculated at 20 pursuant to § 2K2.1(a)(4)(A) of the United States Sentencing Guidelines ("Guidelines"), applicable to unlawful possession of firearms committed by a person previously convicted of a felony crime of violence or controlled substance offense.[2] The PSR then added four levels pursuant to § 2K2.1(b)(6) because Tenorio had possessed the gun in connection with another felony offense, for a final offense level of 24. Finally,

---

[2] Because they were closely related, the PSR grouped the two charges together and performed a single Guidelines range calculation. See U.S.S.G. § 3D1.2. Although the PSR incorrectly listed § 2K2.1(a)(3)(B) as the applicable Guidelines provision establishing Tenorio's base offense level, it applied the correct provision, § 2K2.1(a)(4)(A), to reach a base offense level of 20.

the PSR calculated a criminal history category of IV.  This resulted in an advisory sentencing range of 77 to 96 months' imprisonment.

Tenorio filed written objections to these calculations, arguing that no felony other than possession itself had been proven by a preponderance of the evidence.  Relying upon Mojica's testimony from trial, the district court disagreed.  Specifically, the court found by a preponderance that Tenorio had committed two New Mexico felonies on June 17:  aggravated assault, N.M. Stat. § 30-3-2(A), and aggravated stalking, N.M. Stat. § 30-3A-3.1(A)(3).  The court applied the enhancement and sentenced Tenorio to 96 months' imprisonment, the top end of the Guidelines range.  U.S.S.G. Ch. 5, Pt. A (Sentencing Table).  Tenorio now appeals his conviction and sentence.

## II

### A

Tenorio challenges the district court's decision to admit Mojica's testimony that he threatened her on past occasions with the same shotgun he was convicted of possessing on June 18.  We review admission of evidence under Rule 404(b) for abuse of discretion.  United States v. Wilson, 107 F.3d 774, 782 (10th Cir. 1997).  When the court's error goes unpreserved, however, we review only for plain error.  Id.; see Fed. R. Crim. P. 52(b).  Tenorio raised a Rule 403 and 404(b) argument only in his motions in limine and did not contemporaneously object to Mojica's testimony during trial.  "Generally, a pretrial motion in limine will not

preserve an objection if the objection is not renewed at the time the evidence is introduced." United States v. Nichols, 169 F.3d 1255, 1264 (10th Cir. 1999). But an exception exists: If "the issue (1) is fairly presented to the district court, (2) is the type of issue that can be finally decided in a pretrial hearing, and (3) is ruled upon without equivocation by the trial judge," we consider the motion in limine sufficient to preserve the error. Id. (quoting United States v. Mejia-Alarcon, 995 F.2d 982, 986 (10th Cir. 1993)); see Fed. R. Evid. 103(a) ("Once the court makes a definitive ruling on the record admitting . . . evidence, either at or before trial, a party need not renew an objection . . . to preserve a claim of error for appeal.").[3] Applying this exception, we decide that Tenorio's motions preserved his objection for appellate review.

First, Tenorio fairly presented the Rule 403 and 404(b) issue in his two pretrial motions in limine. Assuredly, he raised the precise argument he seeks to pursue in this appeal: That the probative value of Mojica's testimony regarding the two past incidents would be substantially outweighed by its potential for unfair prejudice. See United States v. Bedford, 536 F.3d 1148, 1157-58 (10th Cir. 2008). In its response, the government argued that the subject evidence was more probative than prejudicial because it would illuminate Tenorio's "intent,

---

[3] Tenorio failed to include his first motion in limine in the appendix he submitted to this court. Because the motion was before the district court and thus remains a part of the record on appeal, see Fed. R. App. P. 10(a)(1), we exercise our discretion in favor of considering the document in our review, Milligan-Hitt v. Bd. of Trs., 523 F.3d 1219, 1231 (10th Cir. 2008).

motive, knowledge, and absence of mistake" in possessing the gun.

Second, this issue could be decided fairly prior to trial, as the content of the proposed testimony was straightforward and was fully and accurately described. See id. at 1158. Finally, the court unequivocally ruled on the admission of the challenged evidence, denying the relevant portion of Tenorio's motions in limine as follows:

> The court shall allow testimony by Ms. Mojica that in April 2007, she observed the Defendant in possession of the shotgun at issue in this case [and] that on June 17, 2007 she observed the Defendant in possession of the shotgun at issue in this case and that the Defendant threatened Ms. Mojica on June 17, 2007.

See id. ("[T]he court's decision to admit the testimony was final and unequivocal."); cf. Nichols, 169 F.3d at 1265 (concluding that the third Mejia-Alarcon requirement was not met where "[t]he [district] court reserved ruling on defense challenges to . . . prosecution experts" until trial (quotation omitted)). This left for trial only the formulation of appropriate limiting instructions. Tenorio's challenge to Mojica's testimony thus falls under the exception for errors unraised at trial but preserved through a pretrial motion in limine, and we apply an ordinary abuse of discretion standard of review.

**B**

Tenorio contends that Mojica's testimony amounts to inadmissible evidence of prior bad acts. Federal Rule of Evidence 404 prohibits such evidence when

used to show a person's character and resultant conduct but allows its admission

for other purposes.  The Rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove
> the character of a person in order to show action in conformity
> therewith.  It may, however, be admissible for other purposes, such
> as proof of motive, opportunity, intent, preparation, plan, knowledge,
> identity, or absence of mistake or accident . . . .

Fed. R. Evid. 404(b).  To be admitted thereunder, "(1) the evidence must be

offered for a proper purpose; (2) it must be relevant; (3) its probative value must

not be substantially outweighed by its potential for unfair prejudice under Rule

403; and (4) the court must give a proper limiting instruction, if it is requested by

the defendant."  United States v. Moran, 503 F.3d 1135, 1144 (10th Cir. 2007)

(citing Huddleston v. United States, 485 U.S. 681, 691-92 (1988)).  Tenorio

argues that Mojica's testimony was substantially more prejudicial than probative

and should have been excluded pursuant to Rule 403.[4]

Mojica's testimony consisted of two primary assertions.  First, Mojica

testified that she had seen the subject firearm in Tenorio's possession on at least

two past occasions.  Second, she testified that he had threatened her with the gun

on the day before his crimes of conviction, telling her not to "mess with" him

---

[4] He does not contest that the evidence was offered for a proper purpose,
that it was relevant, or that the court gave a proper limiting instruction.  Because
the former two considerations are relevant to the Rule 403 balancing, we
nonetheless discuss them briefly.

because he could "hurt" her.  Because the probative value and potential for prejudice is different for each, we consider them separately.

**1**

We begin with Mojica's assertion that Tenorio had possessed the same gun in the past, and conclude that the probative value of this testimony was not substantially outweighed by its potential for unfair prejudice.  As the government explained in its response to Tenorio's motions in limine, the testimony shows Tenorio's motive and knowledge in possessing the weapon on June 18—matters which may be proven by evidence of past acts under the terms of Rule 404(b).  Moreover, the evidence is relevant:  it has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.  If Tenorio possessed the same gun on past occasions, it is considerably more likely that the gun still belonged to him at the time it was found in Mojica's car and correspondingly less likely that the gun belonged to someone else or was simply there when he entered.  Possession, of course, is the primary element of each of Tenorio's two crimes of conviction.  See United States v. Jameson, 478 F.3d 1204, 1208-09 (10th Cir. 2007) ("To establish a violation of 18 U.S.C. § 922(g)(1), the government had to prove:  (1) that Mr. Jameson had previously been convicted of a felony, (2) that he thereafter knowingly possessed a firearm, and (3) that such possession was in or affected interstate commerce."); United

States v. Reddick, 203 F.3d 767, 771 (10th Cir. 2000) ("Section 922(g)(8) sets forth the three elements necessary to sustain a conviction: 1) the defendant was subject to a restraining order issued after a hearing, 2) the defendant thereafter knowingly possessed a firearm, and 3) the possession was in or affecting interstate commerce.").

Balanced against the probative value of Mojica's testimony is its potential for prejudice. Even if relevant, evidence may be excluded if its probative value is substantially outweighed by a danger of unfair prejudice to the defendant. United States v. Smith, 534 F.3d 1211, 1218 (10th Cir. 2008) (citing Fed. R. Evid. 403). Evidence is unfairly prejudicial if it "make[s] a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." Id. at 1219 (quotation omitted). Evidence of past possession could unfairly prejudice Tenorio by leading the jury to draw exactly the conclusion Rule 404(b) seeks to avoid—that his prior acts of weapons possession demonstrate that he has a tendency to possess guns and thus likely did so on June 18.

Yet, we see no abuse of discretion in the court's decision to admit the testimony. The probative value of Mojica's background knowledge of the weapon at issue is unquestionable. In particular, the testimony that Tenorio acknowledged his ownership of the weapon to her in the past made his possession

-11-

on June 18 considerably more likely. And her testimony that he possessed the gun on the very day before the incident at issue showed that he continued to possess the weapon in the intervening months. This probative value is not substantially outweighed by the accompanying danger of prejudice, and thus admission of the challenged testimony was far from "arbitrary, capricious, or whimsical." United States v. Shumway, 112 F.3d 1413, 1419 (10th Cir. 1997) (quotation omitted); see also United States v. Mares, 441 F.3d 1152, 1157 (10th Cir. 2006) (admissibility of evidence under Rule 404(b) "involves a case-specific inquiry that is within the district court's broad discretion" (quotation omitted)).

**2**

As for the second component of Mojica's testimony—her allegation that Tenorio not only possessed the gun in the past, but used it to threaten her—we reach the same conclusion. Like her testimony regarding possession, this evidence was offered for a proper purpose. The government contends that the evidence is relevant because it shows that Tenorio had a motive for bringing the gun to Mojica's house on June 18: to intimidate her into allowing him to drive her car. Given the broad definition of relevance in our evidentiary system, see Fed. R. Evid. 401, we agree.

As for the danger of unfair prejudice, we agree with Tenorio that this danger was significant. Mojica's testimony could lead a jury to conclude that Tenorio was a threat to her safety, or generally had a violent character towards

-12-

women.  See, e.g., United States v. Hands, 184 F.3d 1322, 1329 n.20 (11th Cir. 1999) ("The hoary chestnut 'When did you stop beating your wife?,' for example, might lack some of its illustrative power if the topic of domestic violence did not produce such visceral reactions." (quotation omitted)).  However, we cannot say that the district court's decision to admit the evidence was an abuse of discretion. The danger of unfair prejudice is partially mitigated by the fact that the jury was properly shown a restraining order preventing Tenorio from contacting Mojica.[5] Thus, the jury already had a basis to conclude that Tenorio was a threat to her. Cf. United States v. Griffin, 389 F.3d 1100, 1104 (10th Cir. 2004) ("[I]nformation that the defendant is currently on probation will generally create little or no prejudicial effect when the jury already knows of the defendant's criminal history.").  We cannot say that the probative value of a motive explaining Tenorio's gun possession on the day in question was substantially outweighed by the danger of unfair prejudice.  See, e.g., United States v. Morris, 287 F.3d 985, 990-91 (10th Cir. 2002) (holding that the defendant's statement that he purchased a gun in order to avoid arrest for a murder was evidence of a motive for possession, admissible under Rule 404(b) despite great potential for unfair prejudice).  We thus perceive no error in the admission of Mojica's testimony and affirm Tenorio's conviction.

---

[5] The jury was required to see evidence regarding the restraining order because its existence is an element of an offense under 18 U.S.C. § 922(g)(8). Reddick, 203 F.3d at 771.

**III**

Regarding his sentence, Tenorio argues that the district court erred in imposing an enhancement to his advisory Guidelines sentencing range. If a district court errs in calculating this range, the sentence is rendered procedurally unreasonable. United States v. Scott, 529 F.3d 1290, 1300 (10th Cir. 2008). In determining whether the district court correctly calculated the range, we review the district court's legal conclusions de novo and its factual findings for clear error.[6] United States v. Sells, 541 F.3d 1227, 1235 (10th Cir. 2008). It is the government's burden to prove by a preponderance of the evidence any uncharged conduct supporting a sentencing enhancement. United States v. Matthews, 942 F.2d 779, 784 (10th Cir. 1991).

Under § 2K2.1(b)(6) of the Guidelines, a four level enhancement applies if a defendant convicted of being a felon in possession of a weapon did so "in connection with" another felony. At sentencing, the trial court found by a preponderance of the evidence that Tenorio committed two New Mexico felonies on June 17: aggravated assault, N.M. Stat. § 30-3-2(A), and aggravated stalking,

---

[6] Tenorio preserved the alleged error in his objections to the PSR and at sentencing. See United States v. Mendoza, 543 F.3d 1186, 1195 (10th Cir. 2008) (noting that a defendant preserves his claims of sentencing error through written objections to the PSR or an oral objection during the sentencing hearing). Thus, we apply our ordinary standard of review.

N.M. Stat. § 30-3A-3.1(A)(3).[7]  Thus, the court concluded that Tenorio committed

the June 18 possession offenses "in connection with" a felony, and imposed a

§ 2K2.1 enhancement.

Tenorio's challenge on appeal is a narrow one.  The district court's findings

were supported solely by Mojica's testimony, and Tenorio argues that the district

court committed clear error when it stated that her testimony was

"uncontroverted" and when it found her testimony credible.  He particularly

objects to the district court's comment that the jury, like the judge himself, found

Mojica credible.  Because the jury sent a note to the judge during deliberations

asking whether it could convict based solely on the conclusion that "the defendant

knowingly sat in a car for several minutes with a gun," Tenorio asks us to infer

---

[7] Either felony would support application of the enhancement, and Tenorio does not contest whether the elements of either crime were met by the conduct alleged in Mojica's testimony.  Aggravated assault is defined as  "unlawfully assaulting or striking at another with a deadly weapon," N.M. Stat. § 30-3-2(A), and requires proof that the defendant "threatened or engaged in menacing conduct with a deadly weapon toward a victim, causing the victim to believe that he or she was about to be in danger of receiving an immediate battery," State v. Bachicha, 808 P.2d 51, 54 (N.M. Ct. App. 1991).  Aggravated stalking is defined as "stalking perpetrated by a person . . . in possession of a deadly weapon."  N.M. Stat. § 30-3A-3.1(A)(3).  Stalking consists of "knowingly pursuing a pattern of conduct that would cause a reasonable person to feel frightened, intimidated or threatened" with intent to "place another person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint" or in "fear for his safety."  State v. Anderson, 24 P.3d 327, 329 (N.M. Ct. App. 2001) (quotation omitted).

that the jury did not credit Mojica's testimony that Tenorio placed the gun in the car—or, presumably, the rest of her testimony.[8]

Whether the jury found Mojica credible (or whether the district judge believed it did) is irrelevant at the sentencing stage. The district court itself is the factfinder at sentencing and may make all necessary credibility determinations. See United States v. Virgen-Chavarin, 350 F.3d 1122, 1134 (10th Cir. 2003); see also United States v. Magallanez, 408 F.3d 672, 685 (10th Cir. 2005) (a district court may find facts by a preponderance even if rejected by a jury under a reasonable doubt standard).[9] Accordingly, the court was well within its discretion to decide for itself that Mojica was credible.

Once such a determination is made, it is "virtually unreviewable on appeal." Virgen-Chavarin, 350 F.3d at 1134 (quotation omitted). "We will not hold that testimony is, as a matter of law, incredible unless it is unbelievable on its face, i.e., testimony as to facts that the witness physically could not have possibly observed or events that could not have occurred under the laws of nature." Id. (quotation omitted). There is nothing physically improbable about

---

[8] Tenorio makes no argument that a preponderance of the evidence bears against the enhancement if Mojica's testimony is credited.

[9] Even if the jury's credibility assessment were relevant to a sentencing challenge, "[t]he jury speaks through its verdict" and not through any notes submitted to the court in the process of reaching that verdict. United States v. Espinoza, 338 F.3d 1140, 1148 (10th Cir. 2003). Thus, we will not consider the jury's note in our review.

the events Mojica claims transpired on June 17. Thus, the district court did not err in concluding by a preponderance of the evidence that they occurred, and we find no procedural error in Tenorio's sentence.

**IV**

**AFFIRMED**.

ENTERED FOR THE COURT

Carlos F. Lucero
Circuit Judge